[Cite as *In re L.W.*, 2017-Ohio-4352.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:                                             CASE NO. 9-16-55

    L.W.,

ADJUDICATED DEPENDENT CHILD.         O P I N I O N

[JAMES WISE, JR. - APPELLANT]

---

IN RE:                                             CASE NO. 9-16-56

    S.W.,

ADJUDICATED DEPENDENT CHILD.         O P I N I O N

[JAMES WISE, JR. - APPELLANT]

---

**Appeals from Marion County Common Pleas Court
Juvenile Division
Trial Court Nos. 2015AB76 and 2015AB75**

**Judgments Affirmed**

**Date of Decision:   June 19, 2017**

---

**APPEARANCES:**

    *Andrew S. Wick* **for Appellant**

    *Justin J. Kahle* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Appellant James Wise, Jr. ("James") brings this appeal from the judgments of the Court of Common Pleas of Marion County, Juvenile Division, terminating his parental rights and granting permanent custody of S.W. and L.W. ("the children") to the Marion County Children's Services Board ("the Agency"). James argues on appeal that the trial court erred by not making the necessary findings. For the reasons set forth below, the judgments are affirmed.

{¶2} On March 20, 2015, L.W. and S.W. were born to James and the mother, Laura ("Laura"). Doc. 1. The Agency immediately filed a motion for emergency temporary custody on the grounds that the parents had previously had seven other children removed due to the conditions of the home. Doc. 2. The trial court granted the motion. Doc. 1 and 3. On March 31, 2015, the Agency filed a complaint alleging that the children were abused and dependent. Doc. 4. The complaint alleged that Laura and the children all tested positive for barbiturates at the time of the birth of the children. *Id.* A guardian ad litem ("GAL") was appointed for the children on April 3, 2015. Doc. 7. An adjudication hearing was held on June 22, 2015. Doc. 19. The parties all stipulated that the children were dependent. *Id.* The magistrate ultimately issued his decision and the trial court adopted the decision of the magistrate on May 13, 2016. Doc. 19 and 20. The dispositional hearing was held on August 6, 2015. Doc. 21. On May 13, 2016, the magistrate ultimately

issued his decision granting temporary custody of the children to the Agency. *Id.* The trial court adopted the dispositional recommendation of the magistrate on the same day. Doc. 22.

{¶3} On July 14, 2016, the Agency filed its motions for permanent custody of the children on the grounds that the children should not be placed with either parent. Doc. 25. A hearing on the motions was held on October 6, 2016. Doc. 38. The trial court found that the children could not be placed with their parents within a reasonable time and that it was in the best interest of the children to terminate the parental rights of James and Laura and grant permanent custody to the Agency. *Id.* The ruling of the court was journalized on October 26, 2016. *Id.* On November 22, 2016, James filed his notice of appeal.[1] Doc. 44. On appeal, James raises one assignment of error.

> **The trial court did not properly consider the specific factors required by Ohio Revised Code 2151.414(D) when granting a Motion for Permanent Custody when it granted [the Agency's] Motion for Permanent Custody.**

{¶4} The sole assignment of error argues that the trial court did not consider the statutory factors in reaching its conclusion that terminating the parental rights of James and granting permanent custody of the children to the Agency was in the best interests of the children. The right to parent one's own child is a basic and essential

---

[1] No notice of appeal was filed by Laura.

civil right. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 3d Dist. No. 5–02–52, 5–02–53, 5–02–54, 2003–Ohio–1269, ¶ 6. These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id.* When considering a motion to terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows.

> **(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:**
>
> **(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.**
>
> **\* \* \***
>
> **(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.**
>
> **For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency**

> **on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from home.**
>
> **\* \* \***
>
> **(C) In making the determination required by this section \* \* \*, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section \* \* \* but shall not be submitted under oath.**

R.C. 2151.414.

{¶5} The determination whether to grant a motion for permanent custody requires a two-step approach. *In re G.B.*, 10th Dist. Franklin No. 04AP–1024, 2005–Ohio–3141, ¶ 13. The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶6} In addressing the question of whether any of the factors set forth in R.C. 2151.414(B)(1) apply, the trial court determined that the children had not been in the temporary custody of the Agency for twelve out of a twenty-four month period. This was incorrect. The children were placed in the temporary custody of the Agency on March 20, 2015. Doc. 1. The children were adjudicated dependent on

May 13, 2016.[2]  Doc. 19.  Sixty days after the removal from the home would have been May 19, 2015.  Thus, the earlier of the two dates would have been May 19, 2015.  The Agency filed its motions for permanent custody on July 14, 2016, which is more than twelve months out of a consecutive 22 month period.

{¶7} Although the trial court incorrectly calculated the amount of time the children were in the temporary custody of the Agency, it also determined that the children could not be placed with their parents within a reasonable time.  In making the determination, the trial court considered the relevant factors.

> **(E) In determining at a hearing help pursuant to division (A) of this section * * *, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:**
>
> **(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made**

---

[2] The Agency and the trial court repeatedly indicate that the children were adjudicated dependent on June 15 or June 22, 2015.  However, that is the date of the hearing.  The actual order finding the children to be dependent was not filed until May 13, 2016.  A "court speaks only through its journal entries." *Infinite Security Solutions, L.L.C. v. Karam Properties, II, Ltd.* 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 28.  Thus the date of the adjudication was May 13, 2016.

**available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.**

**\* \* \***

**(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.**

**\* \* \***

**(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.**

R.C. 2151.414(E). The trial court specifically found that the parents had not improved the home conditions, in that the family home was still in disrepair and lacked running water. Doc. 38 at 4. At the time of the permanent custody hearing, the parents were not living in the home. *Id.* Additionally, the parents had not completed the parenting classes, drug screening, and counseling as required by the case plan. *Id.* Based upon this evidence, the trial court found that the parents failed to comply with the case plan as required by R.C. 2151.414(E)(1). The trial court also found that the parents had only exercised three of their 74 visits scheduled with the children. *Id.* at 4-5. This falls under R.C. 2151.414(E)(4). Based upon the prior findings, the trial court also found that the parents were unwilling to provide shelter for the children as required by R.C. 2151.414(E)(14). None of these findings are

contradicted by James. The record contains ample evidence to support the findings. Thus, the trial court's conclusions that the children could not or should not be placed with their parents within a reasonable time is supported.

{¶8} Once it is determined that the children cannot or should not be placed with the parents, the trial court must consider whether the termination of parental rights and granting of permanent custody of the children to the Agency is in the best interests of the children. R.C. 2151.414(D). This statute requires the trial court to consider the following factors: 1) the interaction and interrelationship of the child with parents, siblings, relatives, foster parents, and anyone else who significantly affects the children; 2) the wishes of the children; 3) the custodial history of the children; 4) the children's needs for permanency; and 5) any factors set forth in R.C. 2151.414(E)(7-11). R.C. 2151.414(D). James argues that the trial court failed to consider these factors. This court has previously held that "[i]n rendering its judgment, the trial court must either specifically address each of the required considerations set forth in R.C. 2151.414(D) in its judgment entry or otherwise provide some affirmative indication in the record that the court considered the specific factors listed in R.C. 2151.414(D)." *In re Haller*, 3d Dist. Wyandot No. 16-08-16, 2009-Ohio-545, ¶ 14. A review of the judgment entry and the hearing transcript indicates that at no time did the trial court specifically address each of the factors or even indicate that it had specifically considered the factors set forth in

R.C. 2151.414(D). This court notes that doing so would be a better practice as it clarifies what this court is supposed to review. However, the Agency, in its brief, has connected the factors with the evidence supporting the factors and has also pointed to indications in the record that the trial court had considered the factors.

{¶9} As to the R.C. 21515.414(D)(1) factor addressing the relationships between the children and others, the trial court specifically found that although James had been offered 74 visits with the children and were provided transportation to the visits, James only attended three visits. The last time the children saw James was June 9, 2015. At that time, the children would have been less than three months old. For more than a year, the children remained in the sole physical custody of the foster parents with no contact with James. Without any visits, James could not have formed a relationship with the children. Additionally, there was evidence presented that the children were bonded with the foster parents. The foster parents testified to the bond and indicated that the children refer to them as "mama" and "dada". Tr. 44.

{¶10} The R.C. 2151.414(D)(2) factor addresses the children's wishes. At the time of the hearing, the children were not even two years of age. They were incapable of making their wishes known to the court. The trial court had to rely upon the GAL to relay what would be best for the children. The trial court noted

that the GAL submitted his report, that cross-examination of the GAL was waived, and that the GAL recommended permanent custody be granted.

{¶11} The R.C. 2151.414(D)(3) factor the trial court must consider is the custodial history of the children. The trial court noted in its entry that the children had been removed from the home upon birth. Since that time, the children had remained in foster care. The foster mother testified that the children had resided with her family since that time without interruption.

{¶12} R.C. 2151.414(D)(4) requires the trial court to consider the child's need for a legally secure permanent placement. The trial court specifically noted in its entry that James and Laura had been involved with children's services for a long period of time and that they had previously had parental rights terminated for their other seven children. These children were removed from the home upon birth because of the concerns regarding the home that were known due to the other cases. These children were added to the 2013-2014 case plan of the other children. Under that case plan James was required to "keep the home free of environmental hazards including infestations and become informed of the impact of roach infestations on children", "complete an AOD assessment and to follow any recommendations resulting from the assessment, cooperate with the Agency regarding drug screens, complete a domestic violence screening and comply with any recommendations", and "complete parenting classes". Doc. 38 at 2. The trial court found that James

had not allowed the home to be inspected to make sure it was safe and that there was no running water at the home. The trial court also found that James was no longer living at the home. In June of 2016, the caseworker visited the home and found roaches to still be present. *Id*. at 4. The trial court noted that James had "not improved the home conditions that caused the removal of the children." *Id*. Additionally, James had not taken the parenting classes, had not had the domestic violence screening, and had not participated in counseling services offered. *Id*. Although James had several years to work the case plan, he had made no progress. The children had already been in the custody of the Agency for a year and a half and James had not even bothered to see the children since June of 2015.

{¶13} Finally, R.C. 2151.414(D)(5) requires the trial court to consider whether any of the factors listed in R.C. 2151.414(E)(7-11) apply. R.C. 2151.414(E)(11) allows the trial court to consider whether the parent has had his or her "parental rights involuntarily terminated with respect to a sibling of the child" under this section. At the beginning of the judgment entries, the trial court found that it had previously terminated the parental rights of James and granted permanent custody of the seven siblings of the children at issue in this case to the Agency. Doc. 38 at 1.

{¶14} A review of the judgment entries indicates affirmatively that the trial court made findings of fact related to the factors set forth in R.C. 2151.414(D).

Although the better procedure would have been for the trial court to expressly address the factors, there was an indication that the trial court considered the factors. The findings of the trial court are supported by the record. Thus, the assignment of error is overruled.

{¶15} Having found no error in the particulars assigned and argued, the judgments of the Court of Common Pleas of Marion County, Juvenile Division, are affirmed.

*Judgments Affirmed*

**PRESTON, P.J., concurs in Judgment Only.**

**SHAW, J., concurs.**

**/hls**